FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOV X 5 2007
NOV 5 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| TODD KRUEGER,<br><br>Plaintiff,<br><br>v.<br><br>TRADEGUIDER SYSTEMS, LLC, an<br>Illinois limited liability company, and<br>TRADEGUIDER SYSTEMS, LTD., a<br>foreign business corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

07cv6261
JUDGE KENDALL
MAG. JUDGE BROWN

## NOTICE OF REMOVAL (FEDERAL QUESTION)

TradeGuider Systems, LLC ("TradeGuider USA"), by and through its attorneys, files this

Notice under 28 U.S.C. §§ 1331, 1367, 1441 and 1446 to remove this action from the Circuit

Court of Cook County, Illinois, County Department, Chancery Division ("Illinois State Court")

to the United States District Court for the Northern District of Illinois, Eastern Division. In

support of this Notice, TradeGuider USA states as follows:

1.    Todd Krueger ("Krueger" or "Plaintiff") has filed a four-count Complaint,

entitled *Krueger v. TradeGuider Systems, LLC, et al.*, Case No. 07CH27371. A copy of said

Complaint is attached hereto as Exhibit A. Count I relates specifically to Plaintiff's alleged

intellectual property rights under the Copyright Act, 17 U.S.C. § 101, *et seq*. Despite Plaintiff's

failure to cite to the Copyright Act, Plaintiff seeks a declaratory judgment against TradeGuider

USA relating to Plaintiff's alleged intellectual property rights and copyright ownership.

2.    In Paragraph 43 of the Complaint, Plaintiff seeks a declaration of copyright

ownership from the Illinois State Court. Plaintiff asks the Illinois State Court to declare that

"Krueger owns full rights in all of the intellectual property that he created during his

employment contract with [TradeGuider USA]" and that TradeGuider USA "must cease and desist from selling the CD-ROM products that Krueger developed, [and] from continuing to allow access to his years of archived educational seminars and events that are offered free for TradeGuider software owners."

3.     In *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191 (7th Cir. 1987), the Seventh Circuit addressed the ability of a plaintiff to avoid federal court by omitting any reference to federal law.   When the "complaint is actually based on federal law, the plaintiff's effort to conceal this fact because he wants to prevent the defendant from removing the case to federal court must not be allowed to succeed."   816 F.2d at 1195; *See also In re Application of County Collector of County of Winnebago, Illinois (Appeal of O'Brien)*, 96 F.3d 890, 896 (7th Cir. 1996) (stating "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.").   The Seventh Circuit went on to state that this principle is "particularly important in cases arising under copyright law, because federal jurisdiction over such cases is exclusive." *Saturday Evening Post*, 816 F.2d at 1195.

4.     Moreover, a claim is properly considered a copyright claim when provisions of the Copyright Act must be interpreted or the relief requested is governed by the Copyright Act. *See, e.g., gh, LLC v. Curtin*, 422 F. Supp. 2d 994, 996 (N.D. Ind. 2006) (stating "an action arises under the Copyright Act 'if the complaint is for a remedy expressly granted by the Act ... or asserts a claim requiring construction of the Act.'" (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964)).

5.     Plaintiff's requested declaration of copyright ownership will require the application of the "work made for hire" doctrine of § 101 of the Copyright Act and seeks a

2

declaration of copyright ownership in the intellectual property at issue. Also, Plaintiff seeks to enjoin TradeGuider USA from selling and accessing the intellectual property TradeGuider USA rightfully owns. This relief is an exclusive remedy available only under § 502 of the Act. The power to interpret the Copyright Act and the ability to provide relief exclusive to the Act rests solely with the federal courts pursuant to 28 U.S.C. § 1338(a) and 17 U.S.C. § 301.

6.    Krueger seeks a declaration of copyright ownership under the Copyright Act and seeks remedies exclusively available under the Copyright Act. Such a request belongs in federal court. TradeGuider USA may remove the copyright claim in Illinois State Court under 28 U.S.C. §§ 1331, 1441(b) and requests that this action be removed to federal court.

7.    TradeGuider USA may remove Plaintiff's related, state claims under 28 U.S.C. § 1441(c), which allows the removal of otherwise non-removable causes of action when the defendant removes any cause of action that arises under federal law.

8.    The procedural requirements for removal set forth in 28 U.S.C. § 1446 are satisfied.

(a)    The requirements of 28 U.S.C. § 1446(a) are satisfied in that true and correct copies of all process, pleadings and orders served on TradeGuider USA are attached hereto and incorporated herein as Exhibit A.

(b)    The requirements of 28 U.S.C. § 1446(b) are satisfied in that this Notice is filed within thirty days of service of the Complaint upon Defendants. The Complaint was served on October 5, 2007.

(c)    The requirements of 28 U.S.C. § 1446(d) are satisfied in that written notice of the filing of this Notice will be given today to Plaintiff and to the Clerk of the Circuit Court of Cook County, Illinois, a copy of which is attached hereto and incorporated herein as Exhibit B.

9.    Upon information and belief, TradeGuider Systems, Ltd. has not been served.

Dated: November 5, 2007

Respectfully submitted,
TRADEGUIDER SYSTEMS, LLC.


By one of Its attorneys
Stuart Smith (Atty. No. 2655098)
George R. Spatz (Atty. No. 6278494)
Jeremiah J. Posedel (Atty. No. 6291892)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Tel.    312.849.8100
Fax    312.849.3690

4

# **EXHIBIT A**

| | |
|---|---|
| 2120 – Served | 2121 – Served |
| 2220 – Not Served | 2221 – Not Served |
| 2320 – Served By Mail | 2321 – Served By Mail |
| 2420 – Served By Publication | 2421 – Served By Publication |
| SUMMONS | ALIAS – SUMMONS     CCG N001-10M-1-07-05 (      ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, __CHANCERY__ DIVISION

(Name all parties)

TODD KRUEGER

}

## 07CH27371

No. _____

v.

TRADEGUIDER SYS., LLC; TRADEGUIDER SYS., LTD.
LLC; Robert Neiman, 77 W Wacker, Ste 2400, Chicago 60601

## SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room __802__ , Chicago, Illinois 60602

❑ **District 2 – Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

❑ **District 3 – Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

❑ **District 4 – Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

❑ **District 5 – Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

❑ **District 6 – Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

❑ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 34710

Name: Jay R. Hoffman

Atty. for: Plaintiff

Address: 303 W. Madison, Suite 1800

City/State/Zip: Chicago, IL 60606

Telephone: 312-899-0899

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____

SEP 27 2007

DOROTHY BROWN
Clerk of CIRCUIT COURT

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Attorney No. 34710

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION
## (DECLARATORY JUDGMENT)

|  |  |  |
|---|---|---|
| TODD KRUEGER, | ) | |
| Plaintiff, | ) | No. |
| v. | ) | |
| TRADEGUIDER SYSTEMS, LLC, an Illinois limited liability company, and TRADEGUIDER SYSTEMS, LTD., a foreign business corporation, | ) | 07 CH 27371 |
| Defendants. | ) | |

### COMPLAINT IN CHANCERY

Plaintiff Todd Krueger, by his attorney, complains of Defendants TradeGuider Systems, LLC and TradeGuider Systems, Ltd. as follows:

### The Parties

1.    Plaintiff Todd Krueger ("Krueger") is a resident of White Lake, Oakland County, Michigan who lived in Chicago, Cook County, Illinois until September 21, 2007.

2.    Defendant TradeGuider Systems, LLC ("the LLC") is an Illinois limited liability company.

3.    The LLC's principal place of business is in Chicago, Cook County, Illinois.

4.    The LLC markets software and educational courses and materials to persons involved in the securities, futures, and foreign exchange trading industries.

5.    Defendant TradeGuider Systems, Ltd. ("Limited") is a business corporation organized under the laws of the United Kingdom.

6.   Limited's principal place of business is in the United Kingdom.

7.   Limited regularly transacts business in Illinois through its ownership in and its business dealings with the LLC, and through its direct dealings with numerous customers in Illinois and other states by internet, telephone, and mail. Limited has a part owner, Gavin Holmes, who resides in Illinois.

### The Formation Of The LLC

8.   In July 2003, Krueger attended a traders expo in Chicago. At the time, Krueger was living in Michigan.

9.   At the July 2003 traders expo, Krueger met Roy Didlock ("Didlock"), Richard Bednall ("Bednall"), and Gavin Holmes ("Holmes").

10.   At the time, Didlock, Bednall, and Holmes lived in the United Kingdom.

11.   Didlock, Bednall, and Holmes discussed a business relationship with Krueger. In July 2003 and in subsequent discussions, they represented to Krueger that their company, Limited, owned the rights in certain computer software programs and other technology relating to securities, futures and foreign exchange trading software and products.

12.   At the time, Didlock, Bednall, and Holmes were the owners of Limited.

13.   In fact, Limited did not own those computer software programs and other technology. In 2002, Limited had licensed the rights to certain software and technology designed and owned by Tom Williams ("Williams"), also of the United Kingdom. Williams' software managed trading activities, such as the purchase and sale of securities, futures, and foreign exchange products. Didlock, Bednall, and Holmes wanted to open an operation in the United States to market Williams' software and related products. Limited could only acquire ownership of Williams' intellectual property upon payment of certain sums to Williams over

2

time, which Limited did not do. Didlock, Bednall, and Holmes knew these facts but concealed them from Krueger.

14.    In addition, Limited had no intention of making the payments required under its licensing agreement with Williams because it knew it did not have the money to make any payments. Within months of Didlock, Bednall, and Holmes' discussions with Krueger, Limited failed to make the required payments to Williams and was in default on this licensing agreement. Didlock, Bednall, and Holmes knew these facts but concealed them from Krueger.

15.    In reliance on the representations that Didlock, Bednall, and Holmes had made to him, Krueger agreed to go into business with Didlock, Bednall, and Holmes.

16.    Didlock, Bednall, Holmes, and Krueger agreed to form a limited liability company in Illinois to operate their business venture.

17.    This entity, the LLC, was formed in November 2003.

18.    The LLC was erroneously registered with the State of Illinois as TradeGuider LLC. The LLC later changed its registered name to TradeGuider Systems, LLC.

19.    Didlock, Bednall, and Holmes told Krueger that because Limited owned the trading software and technology, the LLC's right to use that intellectual property would be their investment in the LLC, and Krueger would have to invest $85,000 in the LLC in order to acquire his one-fourth membership interest.

20.    Based on the representations of Didlock, Bednall, and Holmes, Krueger agreed to do so. Krueger gave Didlock, Bednall, and Holmes $60,000 by check, which was deposited into the LLC's bank account.

21.    Krueger also signed a limited recourse promissory note for $25,000 payable to the LLC.

3

22.    Krueger does not have a copy of the limited recourse promissory note that he executed around December 2003 but believes that it had substantially the same terms as the draft note attached hereto as Exhibit A ("the Note").

23.    Originally, Didlock, Bednall, Holmes, and Krueger each owned a 25 percent membership interest in the LLC.

24.    Subsequently, Didlock, Bednall, and Holmes transferred their interests in the LLC to Limited.

25.    Thus, the current members of the LLC are Limited, with the 75 percent membership interest, and Krueger, with a 25 percent membership interest.

26.    Krueger and Holmes agreed to move to Chicago, and did move to Chicago, in order to run the LLC.

27.    Since its inception, the LLC has been a manager-managed limited liability company. Krueger and Holmes were the original managers of the LLC.

28.    On September 11, 2007, Krueger resigned as manager of the LLC.

### Krueger's Employment Agreement

29.    In connection with the formation of the LLC, Krueger and the LLC discussed the execution of an employment agreement.

30.    Attached to this Complaint as Exhibit B is a draft of an Employment Agreement between the LLC and Krueger ("the Draft Employment Agreement").

31.    Krueger does not have any version of an employment agreement in its final form, nor any version that the parties executed.

32.    On information and belief, Krueger signed an employment agreement with the LLC whose terms were essentially the same as the Draft Employment Agreement.

33.    For this reason, and for ease of reference, this Complaint will refer to the Draft Employment Agreement, and any final and/or executed employment agreement, collectively and in the alternative as "the Employment Agreement."

34.    From the LLC's inception through September 10, 2007, Krueger served as the Chief Executive Officer of the LLC.

35.    On September 11, 2007, Krueger resigned from his employment with the LLC.

36.    The Employment Agreement required the LLC to pay Krueger a minimum annual salary of $65,000.

37.    The Employment Agreement contained non-competition and non-solicitation provisions.

38.    The Employment Agreement contained a provision stating, in essence, that any intellectual property that Krueger created during his employment with the LLC belonged to the LLC.

## Count I
## Claim For Declaratory Judgment On Employment Agreement  (Against The LLC)

39.    Krueger incorporates by reference the allegations of paragraphs 1 through 38.

40.    The LLC breached its duties to Krueger under the Employment Agreement by, among other things:

(a)    failing to make all of the annual salary payments due to Krueger;

(b)    failing to recognize Krueger's authority to act in the best interests of the LLC as its CEO, thereby frustrating the purpose of the Employment Agreement;

(c)    refusing to cooperate with Krueger's efforts to further the LLC's legitimate business interests;

5

(d)     refusing to require Limited to pay its debts to the LLC, thereby undermining the LLC's ability to make salary payments to Krueger and devaluing Krueger's substantial monetary investment in the LLC;

(e)     refusing to recognize the separate corporate status of the LLC and Limited;

(f)     refusing to consider, negotiate, or enter into inter-company agreements between the LLC and Limited to govern joint projects and revenue sharing;

(g)     misusing the LLC's funds, and Krueger's monetary investment in the LLC, for the personal gain of the owners of Limited;

(h)     misusing the LLC's funds to pay Limited's debts;

(i)     allowing Limited to misdirect funds to Limited that should have been paid to the LLC;

(j)     wrongfully threatening to terminate Krueger's employment for cause; and

(k)     refusing to work with Krueger in good faith.

41.     Krueger complied with his obligations under the Employment Agreement.

42.     The LLC's breach of the Employment Agreement bars the LLC from seeking to enforce any of the terms of the Employment Agreement, including but not limited to the non-competition, non-solicitation, and intellectual property provisions.

43.     Krueger is entitled to a declaration of law that the Employment Agreement is void and unenforceable; that Krueger has no obligation to comply with the non-competition or non-solicitation provisions in the Employment Agreement; that Krueger owns full rights in all of the intellectual property that he created during his employment with the LLC; and that the LLC must cease and desist from selling the CD-ROM products that Krueger developed, from continuing to allow access to his years of archived educational seminars and events that are offered free for

TradeGuider software owners, and from using Krueger's name on website and other marketing materials in connection with the sale of those products.

WHEREFORE, Krueger respectfully asks this Court to (a) enter judgment on Count I in his favor and against the LLC; (b) enter a declaratory judgment as requested above; and (c) award costs of suit and any other relief that is just and proper.

### Count II
### Claim For Declaratory Judgment On The Note (Against The LLC)

44.    Krueger incorporates by reference the allegations of paragraphs 1 through 3 .

45.    The Note was a limited recourse note. Krueger was obligated to pay the LLC on the Note only from distributions that the LLC might make to him.

46.    Krueger did not receive any distributions from the LLC within a year of executing the Note.

47.    Accordingly, the Note is unenforceable, and Krueger had and has no legal obligations to the LLC under the Note.

48.    To remove any uncertainty over the legal rights of the parties to the Note, Krueger is entitled to a declaratory judgment stating that Krueger has no obligations to the LLC under the Note, and that the Note is unenforceable.

WHEREFORE, Krueger respectfully asks this Court to (a) enter judgment on Count II in his favor and against the LLC; (b) enter a declaratory judgment as requested above; and (c) award costs of suit and any other relief that is just and proper.

7

**Count III**
**Claim For Dissolution  (Against The LLC and Limited)**

49.  Krueger incorporates by reference the allegations of paragraphs 1 through 31 .

50.  Pursuant to Section 35-1 of the Limited Liability Company Act, 805 ILCS 180/35-1, Krueger, as a member of the LLC, hereby applies for the dissolution of the LLC, followed by a distribution of the LLC's assets pursuant to the applicable provisions of the Limited Liability Company Act.

51.  Krueger asks this Court to determine, pursuant to Section 35-1(4) (B) of the Limited Liability Company Act, 805 ILCS 180/35-1(4) (B), that Limited, as the other member of the LLC, has engaged in conduct relating to the LLC's business that makes it not reasonably practical to carry on the LLC's business with Krueger as a member, including but not limited to the following conduct:

(a)  refusing to cooperate with Krueger's past efforts to further the LLC's legitimate business interests;

(b)  refusing to pay Limited's debts to the LLC, thereby undermining the LLC's ability to make salary payments to Krueger and devaluing Krueger's substantial monetary investment in the LLC;

(c)  refusing to recognize the separate corporate status of the LLC and Limited;

(d)  refusing to consider, negotiate, or enter into inter-company agreements between the LLC and Limited to govern joint projects and revenue sharing;

(e)  misusing the LLC's funds, and Krueger's monetary investment in the LLC, for the wrongful gain of Limited and the individual owners of Limited;

(f)  misusing the LLC's funds to pay Limited's debts;

(g)  misdirecting funds to Limited that should have been paid to the LLC;

8

(h)   wrongfully threatening to terminate Krueger's employment for cause;

(i)   refusing to work with Krueger in good faith;

(j)   failing to make payments to Williams under Limited's agreement with Williams;

(k)   forcing Krueger to resign as an employee and manager of the LLC;

(l)   wasting and misapplying the assets of the LLC and Krueger's monetary investment in the LLC; and

(m)   operating the LLC solely for the benefit of Limited and its individual owners, without regard to the rights and interests of Krueger.

52.   Krueger asks this Court to determine, pursuant to Section 35-1(4) (E) of the Limited Liability Company Act, 805 ILCS 180/35-1(4) (E), that Limited, as the member of the LLC in control of the LLC, has acted in a manner that is illegal, oppressive, and/or fraudulent with respect to Krueger, including but not limited to the following acts:

(a)   refusing to cooperate with Krueger's past efforts to further the LLC's legitimate business interests;

(b)   refusing to pay Limited's debts to the LLC, thereby undermining the LLC's ability to make salary payments to Krueger and devaluing Krueger's substantial monetary investment in the LLC;

(c)   refusing to recognize the separate corporate status of the LLC and Limited;

(d)   refusing to consider, negotiate, or enter into inter-company agreements between the LLC and Limited to govern joint projects and revenue sharing;

(e)   misusing the LLC's funds, and Krueger's monetary investment in the LLC, for the wrongful gain of Limited and the individual owners of Limited;

(f)   misusing the LLC's funds to pay Limited's debts;

9

(g)    misdirecting funds to Limited that should have been paid to the LLC;

(h)    wrongfully threatening to terminate Krueger's employment for cause;

(i)    refusing to work with Krueger in good faith;

(j)    failing to make payments to Williams under Limited's agreement with Williams;

(k)    forcing Krueger to resign as an employee and manager of the LLC;

(l)    wasting and misapplying the assets of the LLC and Krueger's monetary investment in the LLC; and

(m)    operating the LLC solely for the benefit of Limited and its individual owners, without regard to the rights and interests of Krueger.

WHEREFORE, Krueger respectfully asks this Court to (a) rule in his favor and against the LLC and Limited on Count III; (b) make the determinations set forth above; (c) enter an order requiring the LLC and Limited to proceed with the dissolution of the LLC pursuant to the applicable provisions of the Limited Liability Company Act; and (d) award costs of suit and any other relief that is just and proper.

### Count IV
### Claim For Fraud  (Against Limited And the LLC)

53.    Krueger incorporates by reference the allegations of paragraphs 1 through 38.

54.    In the discussions between Limited's principals and Krueger in mid to late 2003 that led to the formation of the LLC and Krueger's monetary investment in the LLC, and continuously through the 2004 to 2006 time period, Limited, by its principals Didlock, Bedrall, and Holmes, made numerous misrepresentations and/or omissions of material fact to Krueger, including but not limited to the following:

(a)   Misrepresenting that Limited owned certain computer programs and other

technology related to trading software and products;

(b)   Omitting that Williams actually owned the technology that was the basis of

Limited's business operations, and that Limited had no intention of making the

required payments to Williams because it had no money and soon would be in

default on their agreement;

(c)   Misrepresenting that Limited would have an arm's length relationship with the

LLC and would treat the LLC as a separate business entity;

(d)   Omitting that Limited and its owners would waste and misapply the revenues of

the LLC, and Krueger's monetary investment in the LLC;

(e)   Omitting that Limited would misdirect revenues to Limited that belonged to the

LLC;

(f)   Omitting that Limited would refuse to pay its debts to the LLC;

(g)   Misrepresenting that Limited would cooperate with Krueger's efforts to further

the LLC's legitimate business interests;

(h)   Misrepresenting that the LLC would be able to make the minimum salary

payments to Krueger promised to him in the Employment Agreement;

(i)   Omitting that Limited would refuse to consider, negotiate, or enter into inter-

company agreements between the LLC and Limited to govern joint projects and

revenue sharing;

(j)   Misrepresenting that the LLC would receive all revenue that Limited collected

from sales in North America prior to the legal formation of the LLC;

(k)  Misrepresenting that the LLC would pay the expenses that Holmes' compan\
Energy Exhibits spent in North America as consideration for the LLC's rece pt of
all revenue that Limited collected from sales in North America prior to the l :gal
formation of the LLC;

(l)  Omitting that the individual owners of Limited would use the LLC's funds t \ pay
their own personal expenses; and

(m)  Omitting that Limited would use its majority ownership position in the LLC to
operate the LLC solely for the benefit of Limited and its individual owners;
without regard to the rights and interests of Krueger.

55.  Limited made these misrepresentations and omissions with the knowledge tl at the
misrepresentations were false and that the omissions were misleading and created false
impressions with Krueger.

56.  Krueger relied on these misrepresentations and omissions of Limited in deci ling
to invest most of his life savings in the LLC; in accepting employment with the LLC; in mo ring
his residence in order to work for the LLC; and in continuing to work for the LLC through
September 11, 2007.  Had he known the truth, he would not have invested in and chosen to work
for the LLC.

57.  Specifically, Limited's fraud induced Krueger to execute the Employment
Agreement.

58.  Limited's fraudulent acts continued after the formation of the LLC.  As Limi :d
was the majority owner, and the only other owner of the LLC other than Krueger, Limited's
wrongful acts are attributable to the LLC, and the LLC participated in these wrongful acts.

59.    The above-described fraud perpetuated by Limited and the LLC bars them from attempting to enforce the terms of the Employment Agreement. Krueger is entitled to a declaratory judgment that the Employment Agreement is void and unenforceable.

60.    The above-described fraud perpetuated by Limited and the LLC caused substantial financial damages to Krueger, including but not limited to his $60,000 investment in the LLC; the LLC's failure to make salary payments to Krueger; and his inability to accept other, more profitable employment.

WHEREFORE, Krueger respectfully asks this Court to (a) rule in his favor and against Limited and the LLC on Count IV; (b) enter a declaratory judgment as requested above; (c) award monetary damages against Limited and the LLC, jointly and severally, in an amount in excess of $50,000 to be determined at trial; and (d) award costs of suit and any other relief that is just and proper.

Respectfully submitted,

TODD KRUEGER

By _____
His Attorney

Jay R. Hoffman
Suite 1800
303 West Madison Street
Chicago, IL 60606
(312) 899-0899
Attorney No. 34710

13

# EXHIBIT  A

THE SECURITY REPRESENTED HEREBY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE OFFERED OR SOLD IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT AND SUCH STATE SECURITIES LAWS, OR AN EXEMPTION FROM REGISTRATION THEREUNDER.

## LIMITED RECOURSE PROMISSORY NOTE

Chicago, Illinois
December ___, 2003

$25,000

FOR VALUE RECEIVED, Todd Krueger ("Maker"), hereby promises to pay to Trad Guider Systems, LLC, an Illinois limited liability company ("Payee"), the aggregate principal sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000) on the first anniversary of this Note.

1. Reference to Subscription Agreement. This Promissory Note (the "Note") is being issued and delivered by Maker to Payee as contemplated by the Subscription Agreement dated as of December ___, 2003 (the "Subscription Agreement") between Maker, Payee, Gavin Holmes, Roy Didlock, and Richard Bednall. Terms used and not otherwise defined herein shall have the meanings set forth in the Subscription Agreement.

2. Payment. The principal amount of this Note is due and payable upon the first anniversary of the date of this Note.

3. Interest Rate. The unpaid principal balance due hereunder shall bear no interest.

4. Limited Recourse. Any payments on this Note shall be payable solely from any distributions Maker receives as a member of Payee. In the event that such distribution from Payee do not total $25,000 within the first anniversary of this Note, and thus unpaid principal remains due on this Note at the end of first anniversary of this Note, the obligation of Maker to pay such unpaid principal shall be forgiven.

5. Prepayment. Maker may, at its option at any time and from time to time hereafter, prepay, in whole or in part, without premium or penalty, the outstanding principal amount of this Note.

6. Defaults. Maker shall be deemed in default hereunder upon the occurrence of any of the following (a "Default"):

(a) Failure to Pay Principal. The failure of Maker to pay the principal when due and such failure continues for ten (10) business days after receipt of notice thereof from Payee; or

(b) Bankruptcy, etc. Maker shall have entered against it by a court having jurisdiction thereof a decree or order for relief in respect to Maker in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect or a receiver, liquidator, assignee, custodian, trustee, sequestrator or other similar official shall be appointed for Maker or for any substantial part of Maker's property, or the winding up or liquidation of Maker's affairs shall have been ordered and such shall continue undismissed or unstayed for sixty (60) days; or Maker shall commence a voluntary case under any applicable

bankruptcy, insolvency or other similar law now or hereafter in effect; or consent to the entry of an order for such relief in an involuntary case under any such law, or any such involuntary case shall commence, and not be dismissed within sixty (60) days, or Maker shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official for Maker or for all or substantially all of Maker's property, or make any general assignment for the benefit of creditors.

7.    <u>Consequence of Default</u>.  Upon the occurrence of a Default, the entire then unpaid principal balance hereof, at the option of Payee at any time after a Default has occurred and is continuing, become immediately due and payable.

8.    <u>Miscellaneous</u>.

(a)    Principal and interest due hereunder shall be payable in lawful money of the United States of America and shall be payable to Payee at the address of Payee, or at such other address as may be specified in a written notice to Maker given by Payee.

(b)    If any payment on this Note shall become due on a Saturday, Sunday or a bank or legal holiday, such payment shall be due on the next succeeding business day.

(c)    No delay or omission on the part of Payee in the exercise of any right or remedy hereunder shall operate as a waiver thereof, and no partial exercise of any right or remedy precludes other or further exercise thereof or the exercise of any other rights or remedy.

(d)    Maker hereby waives presentment, protest and demand, notice of protest, demand and dishonor and non-payment of this Note.

(e)    Payee may not transfer or assign this Note.

(f)    This Note shall be governed by and construed in accordance with the internal laws of the State of Illinois, without regard to any conflict of laws provisions.

_____
Todd Krueger

\214008v01\6GVZ01_.DOC

2

# EXHIBIT  B

GT DRAFT 12/3/03

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is made and entered into this ____ day of December, 2003 (the "Effective Date"), by and between Todd Krueger (the "Executive") and TradeGuider Systems, LLC, an Illinois limited liability company (the "Company").

### RECITALS

WHEREAS, the Company will be engaged in the business of creation, marketing, promotion and sales of trading software and services (the "Business"); and

WHEREAS, the Executive possesses knowledge, expertise and experience in the Business which is valuable to the Company and desires to be employed by the Company on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby covenanted and agreed by the Executive and the Company as follows:

Section 1.    Employment.

1.1    Employment. The Company hereby agrees to employ the Executive and the Executive hereby agrees to accept employment and serve the Company on a full time basis and on the terms and conditions set forth herein.

1.2    Duties. During the Term, the Executive shall serve as the Chief Executive Officer of the Company and shall faithfully and diligently perform all jobs and duties as are customary for the position and as may be assigned to him by the Manager of the Company.

1.3    Term. The term of employment under this Agreement shall be ten (10) years commencing on January 1, 2004 (the "Term") and may be extended for two additional five (5) year terms upon mutual agreement of the parties.

1.4    Full Time. During the Term, the Executive shall devote his full time, energies and talents to serving the Company; provided, however, that Executive shall be entitled to serve on corporate, civic or charitable boards or committees, so long as such activities do not interfere with or detract from the performance of Executive's responsibilities hereunder.

Section 2.    Compensation. Subject to the terms of this Agreement, during the term of employment, while the Executive is employed by the Company, the Company shall compensate him for his services as follows:

2.1     <u>Salary</u>.  The Executive shall be entitled to receive an annual salary of $65,000, payable on the first day of each month, subject to withholding and other applicable taxes (the "Salary").  The Managers of the Company will review the Salary annually to determine if there should be any upward adjustments.

2.2     <u>Bonus</u>.  The Executive shall receive such bonuses, if any, as the members of the Company may in their sole and absolute discretion determine.

2.3.     <u>Benefits</u>.  The Executive shall be entitled to participate in health, hospitalization, dental, disability and life insurance plans, savings, pension, and other benefits to the same extent and on the same terms as those benefits are provided by the Company to its other executives from time to time.  Upon the termination of his employment, the Executive shall cease to be entitled to receive benefits, except to the extent required by law.  The Executive shall be entitled to four weeks paid vacation leave for each year of the term.  Any vacation time not taken by the Executive during any year of the Term, may not be carried forward into any succeeding calendar year.

2.4     <u>Membership Interest</u>.  As contemplated by the Operating Agreement of the Company, Executive shall initially own a twenty-five percent (25%) common interest in the Company, represented by twenty-five (25) Membership Interests.

<u>Section 3</u>.     <u>Termination</u>.

3.1     <u>Death</u>.  The Executive's employment hereunder will terminate upon his death.

3.2     <u>Disability</u>.  If the Executive is Disabled and unable to work for more than six (6) months, the Company may terminate the Executive's employment effective upon the delivery of a written notice to the Executive of such termination by the Company.  For purposes of this Agreement, the Executive shall be deemed to be "Disabled" if he has a physical or mental disability or illness that renders him incapable, after reasonable accommodation, of performing his duties under this Agreement; provided, however, that the actions as described in 3.4(d) shall not be deemed a Disability for purposes of this Agreement.  In the event of a dispute as to whether the Executive is Disabled, the Company may refer the same to a licensed practicing physician of the Company's choice, and the Executive agrees to submit to such tests and examination as such physician shall deem appropriate.

3.3     <u>Discontinuation of the Business by the Company</u>.  The Executive's employment hereunder will terminate effective immediately upon the discontinuation of business by the Company.

3.4     <u>Cause</u>.  The Company may terminate the Executive's employment hereunder at any time for Cause, effective upon the delivery of a written notice to the Executive of such termination by the Company for Cause.  For purposes of this Agreement, the term "Cause" shall mean:

a.   the Executive's failure to substantially perform his duties or the Company, violation of any rule or regulation that may be established from time to time for the conduct of the Business, or any breach or neglect of any duty or obligation of the Executive under this Agreement; provided that in circumstances where such failure or breach is curable, the Company shall give the Executive prior written notice of such failure or breach and allow the Executive a period of 10 days in which to cure such failure or breach;

b.   the Executive's conviction of theft or embezzlement;

c.   the Executive's conviction or entering a plea of guilty or nolo contendere to an offense defined under applicable law as a felony or any crime involving dishonesty or a breach of trust;

d.   the Executive's repeated non-prescription use of any controlled substance or the chronic abuse of alcohol which continues twenty days after written notice to Executive from the Company; or

e.   the Executive's engaging in other serious misconduct of such a nature that the continued employment of the Executive may reasonably be expected to adversely affect the Business or properties of the Company.

f.   any violation of Sections 5 or 6 of this Agreement.

3.5   <u>Without Cause</u>.   This Agreement may be terminated by the Company without Cause upon thirty (30) days prior written notice to Executive.

3.6   <u>Retirement</u>.   Executive's employment will terminate, effective immediately, upon the delivery of his notice of retirement.

Section 4.   <u>Effect of Termination</u>.   The Executive's rights to payments and benefits under this Agreement for periods after the effective date of his termination for any reason shall cease upon the earlier of the effective date of his termination pursuant to Section 3 or the last day of the term of this Agreement, and the Company shall not be liable to the Executive for any payments or benefits to the extent such payments or benefits become due on or after such date. In the event that the Executive retires or his employment is terminated by the Company, the Executive's rights and responsibilities with respect to his Membership Interest shall be governed by the appropriate provisions of the Operating Agreement.  In the event that the Executive's employment is terminated by the Company without Cause, the Company shall purchase the Executive's Membership Interests for the greater of (i) such Member's purchase price of the Membership Interests and (ii) Current Value (as defined in the Operating Agreement).

Notwithstanding the foregoing, upon the effective date of the termination of the Executive's employment hereunder for any reason, the Executive shall be entitled to pay lent of his accrued but unpaid Salary, expense reimbursements due and owing to the Executive a: of the effective date of his termination and any other payments or benefits due under the expres. terms of any employee benefit plan for the period ending on the effective date of his terminatic n, less any sums the Executive may owe to the Company. Any amounts payable to the Exect live in accordance with this Section 4 that are not paid at the time of the Executive's death shall I e paid to the legal representative or representatives of the estate of the Executive at the time and in the form determined in accordance with the provisions of this Agreement.

Section 5.    Non-Competition, Non-Solicitation.

5.1    Non-Compete Term.  During the Term and for a period of three (3 years following termination of the Executive's employment, the Executive shall not dire :tly or indirectly (a) contact, solicit, discourage, divert or attempt to contact, solicit, or div rt any of the customers or suppliers of the Company that are currently or were custoir ers or suppliers of the Company during the one (1) year period prior to terminat on of Executive's employment or (b) engage in or have any interest in any sole propriet rship, corporation, company, partnership, association, venture or business or any other erson or entity (whether as an employee, officer, director, partner, agent, security I older, creditor, consultant or otherwise) that directly or indirectly (or through an afi liated entity) competes with the Business and that solicits, discourages, diverts or atten pts to solicit, discourage or divert any of the customers of the Company that are curre tly or were customers of the Company during the one (1) year period prior to terminat on of Executive's employment.

5.2    Non-Solicitation.  During the Term, and for a period of three (3) years following termination of this Agreement, the Executive agrees that he shall not en ploy, solicit for employment or encourage to leave his or her employment any individua who was, during the one (1) year period prior to such employment, solicitatic n or encouragement, or currently is an officer or employee of the Company or any of its subsidiaries or any successor corporation into which the Company or any f its subsidiaries may be merged or consolidated or any of their respective affiliates.

5.3    Intellectual Property.  All Intellectual Property (as defined on Attac ment A hereto) of the Company or its affiliates shall be the sole and exclusive property f the Company without further compensation.  Manager hereby assigns to the Company or its designees, the entire right, title and interest in all Intellectual Property developed c uring Manager's employment with the Company or its affiliates.  Manager shall, : t the Company's request and expense, make applications for domestic or foreign traden arks, patents or copyrights, execute all documents necessary thereto, assist in sec ring, defending or enforcing any such title and right thereto, and assist in any other clai is or litigation concerning the Company or its affiliates.

5.4.    Acknowledgement.  The Executive acknowledges that the restrictio s set forth in this Section 5 are reasonable in scope and essential to the preservation c f the

Company's business and that the enforcement thereof will not in any manner preclude the Executive, in the event of his termination of employment with the Company from becoming gainfully employed in such manner and to such extent as to provide a standard of living for himself and the members of his family.

Section 6.    Confidential Information. During the period that this Agreement remains in effect and following the termination hereof, the Executive shall (i) keep secret and confidential all nonpublic information concerning the Company and its subsidiaries and their respective affiliates (collectively, "Confidential Information") including, but not limited to, trade secrets, know-how, software programs; financial, marketing, business development, rate, cost and pricing information; customer lists, customer records and customer credit and collection information; the existence or terms of any agreements with customers, suppliers, contractors, agents or the executives; and any other information whether or not marked confidential and acquired by or disclosed to the Executive during his employment, (ii) take all reasonable actions necessary or proper to protect the confidential and proprietary nature of Confidential Information, (iii) not disclose the same, either directly or indirectly, to any other person, firm, business entity, and (iv) not use the same in any way. Notwithstanding the foregoing, this Section 6 does not impose an obligation upon the Executive with respect to any portion of the received Confidential Information which (a) through no act or failure to act on the part of the Executive, is now, or hereafter becomes, generally known or available to the public, (b) is hereafter furnished to the Executive by a third party as a matter of right and without restriction on disclosure, or (c) is known to the Executive at the time of receiving such information   The Executive's obligations under this Section 6 shall continue notwithstanding the termination of his relationship with the Company.   Notwithstanding anything to the contrary contained herein, Section 5 and 6 shall survive any termination of this Agreement.

Section 7.    Remedies for Breach. The Executive acknowledges irreparable injury will result to the Company and its business and property in the event of a breach of the terms and conditions of this Agreement to be performed by him, and he agrees that the Company, in addition to any other remedies available to it for such breach or threatened breach, shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either at law or in equity, for injunctive or other relief to perform the covenants of this Agreement or prevent any violation of this Agreement by him or any other person, firm or corporation, and to obtain damages for any breach of this Agreement. In the event of breach by the Company of any of the terms and conditions of this Agreement to be performed by it, the Executive's remedies shall be similarly free of limitations. The remedies provided herein shall be cumulative and in addition to any and all other remedies which either party may have at law or in equity.

Section 8.    Amendment. This Agreement may be amended only by mutual agreement of the parties in writing.

Section 9.    Severability. The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement, and such invalid or unenforceable provision shall be reformed or modified to the minimum extent necessary to make such provision valid and enforceable.

\\chi-srv01\213182v07\6Q5_02_.DOC                    5

**Section 10.**    **Waiver of Breach.**    A failure or delay by either party to insist upon compliance with any provision herein will not operate as, and is not to be construed as, a waiver or amendment of such provision or the right of said party to insist upon compliance with such provision or to take remedial steps to recover damages or other relief for noncompliance. Any express waiver of any provision of this Agreement will not operate and is not to be construed as a waiver of any subsequent breach, whether occurring under similar or dissimilar circumstances.

**Section 11.**    **Successors.**    This Agreement shall be binding upon and shall inure to the benefit of the transferees, successors and assigns of the Company, including any company or corporation with which the Company may merge or consolidate.

**Section 12.**    **Notices.**    Any notice, request, instruction or document to be given hereunder by a party hereto shall be in writing and shall be deemed to have been given or delivered (a) when received if given in person; (b) on the date of transmission if sent by facsimile, telex, telecopy or other wire transmission (receipt confirmed); (c) three (3) days after being sent by recognized delivery service; or (d) five (5) days after being deposited in the U.S. mail, after being certified or registered by the U.S. postal service, postage prepaid. All notices shall be addressed as set forth below:

To the Company:                                    To the Executive:

TradeGuider Systems, LLC                    Todd Krueger

_____                    _____

_____                    _____


**Section 13.**    **Survival of Agreement.**    Except as otherwise expressly provided in this Agreement, the rights and obligations of the parties to this Agreement shall survive the termination of the Executive's employment with the Company, including, without limitation, Sections 5, 6 and 7.

**Section 14.**    **Applicable Law.**    The validity and effect of this Agreement and the rights and obligations of the parties hereto shall be governed by, construed, and determined in accordance with the internal laws of the State of Illinois, without regard to any conflict of laws provisions.

**Section 15.**    **Counterparts.**    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall be and constitute one and the same instrument.

**Section 16.**    **Entire Agreement.**    This Agreement and the Operating Agreement contain all of the terms agreed upon by the parties with respect to the subject matter hereof and supersedes all prior agreements, arrangements, and communications between the parties dealing with such subject matter, whether oral or written.

Section 17.    Headings.    The headings contained in this Agreement are for reference purposes only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision herein.

Section 18.    Acknowledgment by Executive.    The Executive represents to the Company that he is knowledgeable and sophisticated as to business matters, including the subject matter of this Agreement, that he has read this Agreement and that he understands its terms. The Executive acknowledges that, prior to assenting to the terms of this Agreement, he has been given a reasonable time to review it, to consult with counsel of his choice, and to propose terms and negotiate with the Company as to its contents. The Executive and the Company agree that the language used in this Agreement is the language chosen by the parties to express their mutual intent and that no rule of strict construction is to be applied against any party hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of tｈe date first above written.

_____

Todd Krueger

**TRADEGUIDER SYSTEMS, LLC**

By: _____

Name: _____
Title: _____

# **<u>EXHIBIT B</u>**

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION
### (DECLARATORY JUDGMENT)

| | |
|---|---|
| TODD KRUEGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     **Case No. 07 CH 27371** |
| | ) |
| TRADEGUIDER SYSTEMS, LLC, an | ) |
| Illinois limited liability company, and | ) |
| TRADEGUIDER SYSTEMS, LTD., a | ) |
| foreign business corporation, | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF FILING OF NOTICE OF REMOVAL

TO:    Clerk of the Circuit Court of Cook County
        Cook County, Illinois
        Richard J. Daley Center, Room 1001
        50 West Washington Street
        Chicago, Illinois 60602

        Jay R. Hoffman
        Suite 1800
        303 West Madison Street
        Chicago, IL  60606

**PLEASE TAKE NOTICE** that on this 5th day of November, 2007, TRADEGUIDER

SYSTEMS, LLC caused to be filed with the Clerk of the United States District Court for the

Northern District of Illinois a Notice of Removal, a copy of which is hereby served upon you.

Dated: November 5, 2007               Respectfully submitted,
                                    TRADEGUIDER SYSTEMS, LLC.

                                 By one of Their attorneys

Stuart Smith (Atty. No. 2655098)
George R. Spatz (Atty. No. 6278494)
Jeremiah J. Posedel (Atty. No. 6291892)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Tel.   312.849.8100
Fax    312.849.3690

\4841528.1

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on November 5, 2007, the following **NOTICE OF REMOVAL (FEDERAL QUESTION)** was served upon the following via First Class U.S. Mail, postage prepaid this 5th day of November 2007:

> Jay R. Hoffman
> Suite 1800
> 303 West Madison Street
> Chicago, IL 60606

and filed on November 5, 2007, with the Clerk of the Circuit Court of Cook County, Illinois at the Richard J. Daley Center, Room 1001, 50 West Washington Street, Chicago, Illinois 60602.

Stuart Smith (Atty. No. 2655098)
George R. Spatz (Atty. No. 6278494)
Jeremiah J. Posedel (Atty. No. 6291892)
McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, Illinois 60601-1815
Tel: (312) 849-8100
Fax: (312) 849-3690

\4857843.1

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOV X 5 2007
NOV 5 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TODD KRUEGER,                          )
                                       )
          Plaintiff,                   )
                                       )     C
     v.                                )
                                       )          07cv6261
TRADEGUIDER SYSTEMS, LLC, an           )          JUDGE KENDALL
Illinois limited liability company, and )         MAG. JUDGE BROWN
TRADEGUIDER SYSTEMS, LTD., a           )
foreign business corporation,          )
                                       )     Jury Trial Demanded
          Defendants.                  )

## NOTICE OF FILING

TO:   Clerk of the Circuit Court of Cook County          Jay R. Hoffman
      Cook County, Illinois                              Suite 1800
      Richard J. Daley Center, Room 1001                 303 West Madison Street
      50 West Washington Street                          Chicago, IL 60606
      Chicago, IL 60602

PLEASE TAKE NOTICE that on this 5th day of November 2007, we filed with the
United States District Court for the Northern District of Illinois Eastern Division, the attached
**NOTICE OF REMOVAL (FEDERAL QUESTION)**, a copy of which is attached and hereby
served upon you.

Dated: November 5, 2007                    Respectfully submitted,
                                           TRADEGUIDER SYSTEMS, LLC.


                                           By one of Their attorneys
                                           Stuart Smith (Atty. No. 2655098)
                                           George R. Spatz (Atty. No. 6278494)
                                           Jeremiah J. Posedel (Atty. No. 6291892)
                                           McGuireWoods LLP
                                           77 West Wacker Drive, Suite 4100
                                           Chicago, IL 60601
                                           Tel.    312.849.8100
                                           Fax     312.849.3690

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on November 5, 2007, the following **NOTICE OF FILING OF NOTICE OF REMOVAL** was served upon the following via First Class U.S. Mail, postage prepaid this 5th day of November 2007:

Jay R. Hoffman
Suite 1800
303 West Madison Street
Chicago, IL  60606

Stuart Smith (Atty. No. 2655098)
George R. Spatz (Atty. No. 6278494)
Jeremiah J. Posedel (Atty. No. 6291892)
McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, Illinois  60601-1815
Tel:  (312) 849-8100
Fax:  (312) 849-3690