**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TODD KRUEGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CASE NO. 07-CV-6261** |
| | ) | |
| TRADEGUIDER SYSTEMS, LLC, an | ) | **JUDGE KENDALL** |
| Illinois limited liability company, and | ) | **MAGISTRATE JUDGE BROWN** |
| TRADEGUIDER SYSTEMS, LTD, a | ) | |
| foreign business corporation, | ) | |
| | ) | |
| Defendants. | ) | **JURY DEMAND REQUESTED** |
| _____ | ) | |
| | ) | |
| TRADEGUIDER SYSTEMS, LLC, an | ) | |
| Illinois limited liability company, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TODD KRUEGER, | ) | |
| | ) | |
| Counter-Defendant, | ) | |
| | ) | |
| THOMAS WILLIAMS, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**TRADEGUIDER SYSTEMS LLC'S**
**ANSWER, COUNTERCLAIMS AND THIRD PARTY COMPLAINT**

NOW COMES Defendant TradeGuider Systems, LLC ("TradeGuider USA"), through its

counsel, Stuart Smith, George R. Spatz, and Jeremiah J. Posedel of McGuireWoods LLP, and for

its Answer to the Complaint of Plaintiff Todd Krueger ("Krueger" or "Plaintiff"), its

Counterclaims and its Third Party Complaint states as follows:

1

## ANSWER

### The Parties

1.     Plaintiff Todd Krueger ("Krueger") is a resident of White Lake, Oakland County, Michigan who lived in Chicago, Cook County, Illinois until September 21, 2007.

**ANSWER:**     TradeGuider USA states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 and, accordingly, denies same.

2.     Defendant TradeGuider Systems, LLC ("TradeGuider USA") is an Illinois limited liability company.

**ANSWER:**     Admitted.

3.     TradeGuider LLC's principal place of business is in Chicago, Cook County, Illinois.

**ANSWER:**     Admitted.

4.     TradeGuider LLC markets software and educational courses and materials to persons involved in the securities, futures, and foreign exchange trading industries.

**ANSWER:**     TradeGuider USA admits that Paragraph 4 represents a portion of TradeGuider USA's business activities.  To the extent Paragraph 4 seeks to limit TradeGuider USA to such activities, TradeGuider USA denies the allegations contained therein.

5.     Defendant TradeGuider Systems, Ltd. ("Limited") is a business corporation organized under the laws of the United Kingdom.

**ANSWER:**     Admitted.

6.     Limited's principal place of business is in the United Kingdom.

**ANSWER:**     Admitted.

7.     Limited regularly transacts business in Illinois through its ownership in and its business dealings with the LLC, and through its direct dealings with numerous customers in Illinois and other states by internet, telephone, and mail. Limited has a part owner, Gavin Holmes, who resides in Illinois.

**ANSWER:**     TradeGuider USA admits only that TradeGuider UK has dealings with it as a majority owner of TradeGuider USA and that Gavin Holmes is a part owner of TradeGuider

UK and resides in Illinois.  Responding further, TradeGuider USA denies all remaining allegations contained in Paragraph 7.

## **The Formation Of The LLC**

8.      In July 2003, Krueger attended a traders expo in Chicago. At the time, Krueger was living in Michigan.

**ANSWER:**    Admitted.

9.      At the July 2003 traders expo, Krueger met Roy Didlock ("Didlock"), Richard Bednall ("Bednall"), and Gavin Holmes ("Holmes").

**ANSWER:**    Admitted.

10.     At the time, Didlock, Bednall, and Holmes lived in the United Kingdom.

**ANSWER:**    Admitted.

11.     Didlock, Bednall, and Holmes discussed a business relationship with Krueger. In July 2003 and in subsequent discussions, they represented to Krueger that their company, Limited, owned the rights in certain computer software programs and other technology relating to securities, futures and foreign exchange trading software and products.

**ANSWER:**    TradeGuider USA states that the allegations contained in Paragraph 11 are so vague and ambiguous that it cannot reasonably be expected to formulate a response thereto and, accordingly, denies same.

12.     At the time, Didlock, Bednall, and Holmes were the owners of Limited.

**ANSWER:**    Admitted.

13.     In fact, Limited did not own those computer software programs and other technology. In 2002, Limited had licensed the rights to certain software and technology designed and owned by Tom Williams ("Williams"), also of the United Kingdom. Williams' software managing trading activities, such as the purchase and sale of securities, futures, and foreign exchange products. Didlock, Bednall, and Holmes wanted to open an operation in the United States to market Williams' software and related products. Limited could only acquire ownership of Williams' intellectual property upon payment of certain sums to Williams over time, which Limited did not do. Didlock, Bednall, and Holmes knew these facts but concealed them from Krueger.

**ANSWER:**    Denied.

14.    In addition, Limited had no intention of making the payments required under its licensing agreement with Williams because it knew it did not have the money to make any payments. Within months of Didlock, Bednall, and Holmes' discussions with Krueger, Limited failed to make the required payments to Williams and was in default on this licensing agreement. Didlock, Bednall, and Holmes knew these facts but concealed them from Krueger.

**ANSWER:**    Denied.

15.    In reliance on the representations that Didlock, Bednall, and Holmes had made to him, Krueger agreed to go into business with Didlock, Bednall, and Holmes.

**ANSWER:**    Denied.

16.    Didlock, Bednall, Holmes, and Krueger agreed to form a limited liability company in Illinois to operate their business venture.

**ANSWER:**    Admitted.

17.    This entity, the LLC, was formed in November 2003.

**ANSWER:**    Admitted.

18.    The LLC was erroneously registered with the State of Illinois as TradeGuider LLC. The LLC later changed its registered name to TradeGuider Systems, LLC.

**ANSWER:**    Admitted.

19.    Didlock, Bednall, and Holmes told Krueger that because Limited owned the trading software and technology, the LLC's right to use that intellectual property would be their investment in the LLC, and Krueger would have to invest $85,000 in the LLC in order to acquire his one-fourth membership interest.

**ANSWER:**    Denied.

20.    Based on the representations of Didlock, Bednall, and Holmes, Krueger agreed to do so. Krueger gave Didlock, Bednall, and Holmes $60,000 by check, which was deposited into the LLC's bank account.

**ANSWER:**    TradeGuider USA admits only that Krueger invested $60,000 to purchase 25% of the LLC from Holmes, Bednall and Didlock.  This payment was made by Krueger directly into the LLC's bank account and covered by a $60,000 promissory note repayable in December 2006 to Holmes, Bednall and Didlock.  Responding further, TradeGuider USA denies the remaining allegations contained in Paragraph 20.

4

21.    Krueger also signed a limited recourse promissory note for $25,000 payable to the LLC.

**ANSWER:**    Admitted.

22.    Krueger does not have a copy of the limited recourse promissory note that he executed around December 2003 but believes that it had substantially the same terms as the draft note attached hereto as Exhibit A ("the Note").

**ANSWER:**    TradeGuider USA states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 and, accordingly, denies same.

23.    Originally, Didlock, Bednall, Holmes, and Krueger each owned a 25 percent membership interest in the LLC.

**ANSWER:**    Admitted.

24.    Subsequently, Didlock, Bednall, and Holmes transferred their interests in the LLC to Limited.

**ANSWER:**    Admitted.

25.    Thus, the current members of the LLC are Limited, with the 75 percent membership interest, and Krueger, with a 25 percent membership interest.

**ANSWER:**    Admitted.

26.    Krueger and Holmes agreed to move to Chicago, and did move to Chicago, in order to run the LLC.

**ANSWER:**    Admitted.

27.    Since its inception, the LLC has been a manager-managed limited liability company. Krueger and Holmes were the original managers of the LLC.

**ANSWER:**    Admitted.

28.    On September 11, 2007, Krueger resigned as manager of the LLC.

**ANSWER:**    TradeGuider admits that on or about September 11, 2007, Krueger formally repudiated his Employment Agreement and his obligations owed to the LLC.

### Krueger's Employment Agreement

29.    In connection with the formation of the LLC, Krueger and the LLC discussed the execution of an employment agreement.

**ANSWER:**    Admitted.

30.    Attached to this Complaint as Exhibit B is a draft of an Employment Agreement between the LLC and Krueger ("the Draft Employment Agreement").

**ANSWER:**    TradeGuider USA states that Krueger should have the original of the Employment Agreement.  Responding further, TradeGuider USA states that it believes that the Draft Employment Agreement is similar if not the same as the executed version of the Employment Agreement, but until such time that TradeGuider USA or Krueger locates the executed version of the Employment Agreement, TradeGuider USA is without information sufficient to form a full belief as to the accuracy of the Draft Employment Agreement.

31.    Krueger does not have any version of an employment agreement in its final form, nor any version that the parties executed.

**ANSWER:**    TradeGuider USA states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and, accordingly, denies same.

32.    On information and belief, Krueger signed an employment agreement with the LLC whose terms were essentially the same as the Draft Employment Agreement.

**ANSWER:**    Admitted.

33.    For this reason, and for ease of reference, this Complaint will refer to the Draft Employment Agreement, and any final and/or executed employment agreement, collectively and in the alternative as "the Employment Agreement."

**ANSWER:**    TradeGuider USA states that Paragraph 33 does not contain any factual allegations and, accordingly, no response is required.

34.    From the LLC's inception through September 10, 2007, Krueger served as the Chief Executive Officer of the LLC.

**ANSWER:**    Admitted.

35.    On September 11, 2007, Krueger resigned from his employment with the LLC.

**ANSWER:**    TradeGuider admits that on or about September 11, 2007, Krueger formally repudiated his Employment Agreement and his obligations to the LLC.

36.    The Employment Agreement required the LLC to pay Krueger a minimum annual salary of $65,000.

**ANSWER:**    TradeGuider USA admits that the Employment Agreement provided for a $65,000.00 salary.  Responding further, TradeGuider USA states that the Krueger agreed to defer compensation and agreed to a modified payment plan.  TradeGuider USA denies any remaining allegations contained in Paragraph 36.

37.    The Employment Agreement contained non-competition and non-solicitation provisions.

**ANSWER:**    Admitted.

38.    The Employment Agreement contained a provision stating, in essence, that any intellectual property that Krueger created during his employment with the LLC belonged to the LLC.

**ANSWER:**    Admitted.

**Count I**
**Claim For Declaratory Judgment On Employment Agreement (Against The LLC)**

39.    Krueger incorporates by reference the allegations of paragraphs 1 through 38.

**ANSWER:**    For its response to Paragraph 39 of Count I, TradeGuider USA repeats and realleges its answers to Paragraphs 1-38 as if full set forth herein.

40.    The LLC breached its duties to Krueger under the Employment Agreement by, among other things:

    a.    failing to make all of the annual salary payments due to Krueger;

    b.    failing to recognize Krueger's authority to act in the best interests of the LLC as its CEO, thereby frustrating the purpose of the Employment Agreement;

    c.    refusing to cooperate with Krueger's efforts to further the LLC's legitimate business interests;

    d.    refusing to require Limited to pay its debts to the LLC, thereby undermining the LLC's ability to make salary payments to Krueger and devaluing Krueger's substantial monetary investment in the LLC;

    e.        refusing to recognize the separate corporate status of the LLC and Limited;

    f.        refusing to consider, negotiate, or enter into inter-company agreements between the LLC and Limited to govern joint projects and revenue sharing;

    g.        misusing the LLC's funds, and Krueger's monetary investment in the LLC, for the personal gain of the owners of Limited;

    h.        misusing the LLC's funds to pay Limited's debts;

    i.        allowing Limited to misdirect funds to Limited that should have been paid to the LLC;

    j.        wrongfully threatening to terminate Krueger's employment for cause; and

    k.        refusing to work with Krueger in good faith.

**ANSWER:**    TradeGuider USA denies Paragraph 40 in its entirety, including all sub-paragraphs contained within Paragraph 40.

41.    Krueger complied with his obligations under the Employment Agreement.

**ANSWER:**    Denied.

42.    The LLC's breach of the Employment Agreement bars the LLC from seeking to enforce any of the terms of the Employment Agreement, including but not limited to the non-competition, non-solicitation, and intellectual property provisions.

**ANSWER:**    Denied.

43.    Krueger is entitled to a declaration of law that the Employment Agreement is void and unenforceable; that Krueger has no obligation to comply with the non-competition or non-solicitation provisions in the Employment Agreement; that Krueger owns full rights in all of the intellectual property that he created during his employment with the LLC; and that the LLC must cease and desist from selling the CD-ROM products that Krueger developed, from continuing to allow access to his years of archived educational seminars and events that are offered free for TradeGuider software owners, and from using Krueger's name on website and other marketing materials in connection with the sale of those products.

**ANSWER:**    Denied.

**Count II**
**Claim For Declaratory Judgment On The Note (Against The LLC)**

44.     Krueger incorporates by reference the allegations of paragraphs 1 through 38.

**ANSWER:**     For its response to Paragraph 44 of Count II, TradeGuider USA repeats

and realleges its answers to Paragraphs 1-38 as if full set forth herein.

45.     The Note was a limited recourse note.  Krueger was obligated to pay the LCC on

the Note only from distributions that the LLC might make to him.

**ANSWER:**     Admitted.

46.     Krueger did not receive any distributions from the LLC within a year of executing

the Note.

**ANSWER:**     Admitted.

47.     Accordingly, the Note is unenforceable, and Krueger had and has no legal

obligations to the LLC under the Note.

**ANSWER:**     TradeGuider USA states that Paragraph 47 is a statement of law to which

no answer is required.  Responding further, TradeGuider USA states that no claim has been

made on the Note and that no dispute requiring this Court's determination exists.  To the extent a

response is required, TradeGuider USA denies all of the allegations contained in Paragraph 47.

48.     To remove any uncertainty over the legal rights of the parties to the Note, Krueger

is entitled to a declaratory judgment stating that Krueger has no obligations to the LLC under the

Note, and that the Note is unenforceable.

**ANSWER:**     TradeGuider USA states that Paragraph 48 is a statement of law to which

no answer is required.  Responding further, TradeGuider USA states that no claim has been

made on the Note and that no dispute requiring this Court's determination exists.  To the extent a

response is required, TradeGuider USA denies all of the allegations contained in Paragraph 48.

**Count III**
**Claim For Dissolution (Against The LLC and Limited)**

49.      Krueger incorporates by reference the allegations of paragraphs 1 through 38.

**ANSWER:**    For its response to Paragraph 49 of Count III, TradeGuider USA repeats

and realleges its answers to Paragraphs 1-38 as if full set forth herein.

50.      Pursuant to Section 35-1 of the Limited Liability Company Act, 805 ILCS
180/35-1, Krueger, as a member of the LLC, hereby applies for the dissolution of the LLC,
followed by a distribution of the LLC's assets pursuant to the applicable provisions of the
Limited Liability Company Act.

**ANSWER:**    TradeGuider USA states that Paragraph 50 is a statement of law to which

no answer is required, and that to the extent Paragraph 50 contains any allegations of fact, they

are denied.  Responding further, TradeGuider USA denies that there is any basis under the

Limited Liability Company Act to support an application for dissolution.

51.      Krueger asks this Court to determine, pursuant to Section 35-1(4)(B) of the
Limited Liability Company Act, 805 ILCS 180/35-1(4)(B), that Limited, as the other member of
the LLC, has engaged in conduct relating to the LLC's business that makes it not reasonably
practical to carry on the LLC's business with Krueger as a member, including but not limited to
the following conduct:

  a.      refusing to cooperate with Krueger's past efforts to further the LLC's
          legitimate business interests;

  b.      refusing to pay Limited's debts to the LLC, thereby undermining the
          LLC's ability to make salary payments to Krueger and devaluing
          Krueger's substantial monetary investment in the LLC;

  c.      refusing to recognize the separate corporate status of the LLC and
          Limited;

  d.      refusing to consider, negotiate, or enter into inter-company agreements
          between the LLC and Limited to govern joint projects and revenue
          sharing;

  e.      misusing the LLC's funds, and Krueger's monetary investment in the
          LLC, for the wrongful gain of Limited and the individual owners of
          Limited;

  f.      misusing the LLC's funds to pay Limited's debts;

g.    misdirecting funds to Limited that should have been paid to the LLC;

h.    wrongfully threatening to terminate Krueger's employment for cause;

i.    refusing to work with Krueger in good faith;

j.    failing to make payments to Williams under Limited's agreement with Williams;

k.    forcing Krueger to resign as an employee and manager of the LLC;

l.    wasting and misapplying the assets of the LLC and Krueger's monetary investment in the LLC; and

m.    operating the LLC solely for the benefit of Limited and its individual owners without regard to the rights and interests of Krueger.

**ANSWER:**    TradeGuider USA denies Paragraph 51 in its entirety, including all sub-paragraphs contained within Paragraph 51.

52.    Krueger asks this Court to determine, pursuant to Section 35-1(4)(E) of the Limited Liability Company Act, 805 ILCS 180/35-1(4)(E), that Limited, as the member of the LLC in control of the LLC, has acted in a manner that is illegal, oppressive, and/or fraudulent with respect to Krueger, including but not limited to the following acts:

a.    refusing to cooperate with Krueger's past efforts to further the LLC's legitimate business interests;

b.    refusing to pay Limited's debts to the LLC, thereby undermining the LLC's ability to make salary payments to Krueger and devaluing Krueger's substantial monetary investment in the LLC;

c.    refusing to recognize the separate corporate status of the LLC and Limited;

d.    refusing to consider, negotiate, or enter into inter-company agreements between the LLC and Limited to govern joint projects and revenue sharing;

e.    misusing the LLC's funds, and Krueger's monetary investment in the LLC, for the wrongful gain of Limited and the individual owners of Limited;

f.    misusing the LLC's funds to pay Limited's debts;

g.    misdirecting funds to Limited that should have been paid to the LLC;

h.      wrongfully threatening to terminate Krueger's employment for cause;

i.      refusing to work with Krueger in good faith;

j.      failing to make payments to Williams under Limited's agreement with Williams;

k.      forcing Krueger to resign as an employee and manager of the LLC;

l.      wasting and misapplying the assets of the LLC and Krueger's monetary investment in the LLC; and

m.      operating the LLC solely for the benefit of Limited and its individual owners; without regard to the rights and interests of Krueger.

**ANSWER:**    TradeGuider USA denies Paragraph 52 in its entirety, including all sub-paragraphs contained within Paragraph 52.

### Count IV
### Claim For Fraud (Against Limited And the LLC)

TradeGuider USA makes no answers to the allegations contained in Count IV at this time and has filed a Motion to Dismiss Count IV contemporaneously with this Answer.

### DEFENDANT'S JURY DEMAND

TradeGuider USA requests a trial by jury on all issues triable by jury.

WHEREFORE, TradeGuider USA Respectfully requests that judgment be entered in its favor and against Plaintiff Todd Krueger in addition to any other relief the Court deems just and equitable.

### COUNTERCLAIMS AND THIRD PARTY COMPLAINT

NOW COMES Defendant/Counter-Plaintiff, TRADEGUIDER SYSTEMS, LLC ("TradeGuider USA"), by and through its attorneys Stuart Smith, George R. Spatz and Jeremiah Posedel, and hereby submits its Counterclaims and Third Party Complaint against Plaintiff/Counter-Defendant TODD KRUEGER ("Krueger") and Third-Party Defendant

THOMAS WILLIAMS ("Williams"), joined pursuant to Federal Rule of Civil Procedure 20, upon personal knowledge as to their own acts and upon information and belief as to all other allegations, as follows:

## THE PARTIES

1.      Defendant/Counter-Plaintiff TradeGuider USA is an Illinois limited liability company.

2.      TradeGuider USA's principal place of business is located in Chicago, Cook County, Illinois.

3.      TradeGuider USA offers a unique and highly respected core trading methodology known as "Volume Spread Analysis" and/or "Volume Range Analysis" which has been computerized into a highly sophisticated software program (the "VSA Software") which is at the heart of a highly effective trading support system.

4.      TradeGuider USA retails TradeGuider RT and EOD, the highly respected decision support systems used by serious investors, traders, money managers, professional analysts and stockbrokers in the United States.   To support TradeGuider RT and EOD, TradeGuider USA has developed a substantial online resource center to provide a whole range of educational and supporting services based around the core methodology of Volume Spread Analysis and the VSA Software.

5.      On information and belief, Plaintiff/Counter-Defendant Krueger is a resident of White Lake, Oakland County, Michigan.

6.    Krueger holds a 25 percent membership interest in TradeGuider USA and served as Manager and Chief Executive Officer of TradeGuider USA from its inception in November 2003 until his resignation on or about September 11, 2007.

7.    Third Party Defendant Williams is a resident of the United Kingdom.    On information and belief, Williams resides at 56a Wallace Avenue, Worthing, West Sussex, BN11 5QD.

8.    Williams developed the Volume Spread Analysis methodology and developed the original VSA Software.    Williams exclusively licensed the VSA Software to TradeGuider Systems, Ltd. ("TradeGuider UK") in December 2002.

### JURISDICTION AND VENUE

9.    This counterclaim arises from Krueger's breach of contract, breach of fiduciary duties, disparagement of TradeGuider USA, trademark infringement, unfair and deceptive trade practices, conspiracy, and conversion.    In addition, this counterclaim and third party complaint arises from Krueger's and William's conspiracy to steal TradeGuider USA's property and damage its business.

10.    TradeGuider USA's counterclaims are compulsory under Rule 13(a) of the Federal Rule of Civil Procedure in that they arise out of the same transactions or occurrences that are the subject matter of Krueger's original claims.    Accordingly, this Court has ancillary subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1367(a).

11.    This Court also has independent and ancillary subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 28 U.S.C., 28 U.S.C. § 1338 and 28 U.S.C. § 1367(a).

12.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this litigation occurred in this district.

## THE VSA SOFTWARE AND TRADEGUIDER UK

13.     There are two widely known approaches used to analyze a market, fundamental analysis and technical analysis.  Fundamental analysis is concerned with the question of why something in the market will happen and technical analysis attempts to answer the question of when something will happen in the market.

14.     Volume Spread Analysis is a sophisticated methodology that allows traders to analyze a financial market.  Volume Spread Analysis combines the best of both fundamental and technical analysis into a singular approach that answers both questions of "why" and "when" simultaneously.  Volume Spread Analysis seeks to establish the cause of price movements.  The VSA Software harnesses Volume Spread Analysis into a highly sophisticated software program that allows customers and users to analyze financial markets.

15.     Williams developed the original VSA Software, which was marketed to a small group of customers that were primarily based in Europe.

16.     In May 2002, the founders of TradeGuider UK saw the unique potential of the VSA Software and decided to purchase the Intellectual Property rights in the VSA Software. Accordingly, TradeGuider UK assembled a highly sophisticated development team in December 2002 to support and market the VSA Software.

17.     On or about December 12, 2002, TradeGuider UK entered into a purchase and interim license agreement with Williams for the VSA Software (the "VSA Agreement").  The

VSA Agreement granted to TradeGuider USA an exclusive international license in the VSA Software. In November 2003, TradeGuider UK entered into an agreement with TradeGuider USA for the resale of the VSA Software in the United States and Canada.

### THE CREATION OF TRADEGUIDER USA

18.     In July 2003, Roy Didlock ("Didlock"), Richard Bednall ("Bednall"), and Gavin Holmes ("Holmes"), the owners of TradeGuider UK, met with Krueger at the International Traders Expo in Chicago.

19.     Following the initial success generated by the Chicago Expo, Didlock, Bednall, and Holmes wanted to form a company in the United States that would allow them to market and sell the VSA Software in the United States and Canada. To achieve this, Didlock, Bednall, and Holmes formed a limited liability company, TradeGuider USA, with Krueger as a Manager and the Chief Executive Officer of the company.

20.     Originally, Krueger, Didlock, Bednall, and Holmes each owned 25% of TradeGuider USA. However, effective on September 1, 2004, Didlock, Bednall, and Holmes transferred their shares in TradeGuider USA to TradeGuider UK.

21.     The current members of TradeGuider USA are TradeGuider UK, with a 75% interest, and Krueger, with a 25% interest.

22.     Since the inception of TradeGuider USA, it has been a manager-managed limited liability company. Krueger and Holmes were the original managers. Krueger maintained his manager role until he formally repudiated his Employment Agreement and his obligations owed to TradeGuider USA on September 11, 2007.

## THE EMPLOYMENT AGREEMENT

23.     In order to protect the interests of TradeGuider USA and Krueger, an employment

agreement was executed in or about December 2003 between Krueger and TradeGuider USA

(the "Employment Agreement").  TradeGuider USA has been unable to locate the signed copy of

Krueger's Employment Agreement but believes it is the same or substantially similar to the draft

attached to Krueger's Complaint as Exhibit B.

24.     The Employment Agreement provides that Krueger shall serve as Chief Executive

Officer of TradeGuider USA for a period of not less than the (10) years commencing on January

1, 2004.  (*See* Employment Agreement, § 1.)  Krueger's employment was not "at will."

25.     The Employment Agreement also contains non-competition, non-solicitation and

confidentiality provisions.

26.     Specifically, Section 5.1 of the Employment Agreement provides as follows:

> 5.1     Non-Compete Term.  During the Term and for a period of
> three (3) years following termination of the Executive's
> employment, the Executive shall not directly or indirectly (a)
> contact, solicit, discourage, divert or attempt to contact, solicit, or
> divert any of the customers or suppliers of the Company that are
> currently or were customers or suppliers of the Company during
> the one (1) year period prior to termination of Executive's
> employment or (b) engage in or have any interest in any sole
> proprietorship, corporation, company, partnership, association,
> venture or business or any other person or entity (whether as an
> employee, officer, director, partner, agent, security holder, creditor,
> consultant or otherwise) that directly or indirectly (or through an
> affiliated entity) competes with the Business and that solicits,
> discourages, diverts or attempts to solicit, discourage or divert any
> of the customers of the Company that are currently or were
> customers of the Company during the one (1) year period prior to
> termination of Executive's employment.

27.    Section 6 of the Employment Agreement further provides as follows:

> <u>Confidential Information</u>.  During the period that this Agreement remains in effect and following the termination hereof, the Executive shall (i) keep secret and confidential all nonpublic information concerning the Company and its subsidiaries and their respective affiliates (collectively, "Confidential Information") including, but not limited to, trade secrets, know-how, software programs; financial, marketing, business development, rate, cost and pricing information; customer lists, customer records and customer credit and collection information; the existence or terms of any agreements with customers, suppliers, contractors, agents or the executives; and any other information whether or not marked confidential and acquired by or disclosed to the Executive during his employment, (ii) take all reasonable actions necessary or proper to protect the confidential and proprietary nature of Confidential Information, (iii) not disclose the same, either directly or indirectly, to any other person, firm, business entity, and (iv) not use the same in any way.

28.    These provisions survive any termination of the Employment Agreement.

29.    The Employment Agreement also contains a provision that any Intellectual Property developed by Krueger during his employment with TradeGuider USA belongs to TradeGuider USA.  (See, Employment Agreement, § 5.3)

30.    Upon execution of the Employment Agreement and formation of TradeGuider USA, TradeGuider USA has continued to develop strong educational programs and services to further support the VSA Software and Volume Spread Analysis.

31.    The Employment Agreement provides for a $65,000 salary to be paid to Krueger. However, during the course of his employment, Krueger and Holmes agreed to defer their compensation in the interests of the business.  The other two partners, Bednall and Didlock, never drew a salary from TradeGuider USA.  In May 2006, Krueger and Holmes calculated how much salary had been deferred and agreed on a repayment schedule which started in June 2006.

The agreed upon repayment schedule has been kept to monthly ever since June 2006 and Krueger and Holmes have accepted all payments.

32.     In December 2006, there were sufficient funds on deposit in TradeGuider USA's account for a substantial lump sum to be paid to reduce the deferrals.  Holmes suggested to Krueger that such a payment be made.  However, Krueger rejected this proposal, preferring to maintain the monthly payment arrangement.

33.     On September 11, 2007, Krueger formally repudiated his Employment Agreement and obligations owed to TradeGuider USA.

### KRUEGER'S USE OF TRADEGUIDER USA'S TRADEMARKS

34.     Since January 2006, TradeGuider USA has used the mark "VOLUME RANGE ANALYSIS" (the "VRA Mark") in United States Commerce in connection with TradeGuider USA's business.  TradeGuider USA owns a United States trademark application (Application No. 77/283,323) for the VRA Mark.

35.     Furthermore, since its inception, TradeGuider USA has used the mark "VOLUME SPREAD ANALYSIS" (the "VSA Mark") in United States Commerce in connection with TradeGuider USA's business.  TradeGuider UK owns a UK trademark for the VSA Mark, which it permits TradeGuider USA to use in the United States and Canada.

36.     TradeGuider USA consistently displays and uses the VSA and VRA Marks in connection with its business.

37.     As a result of TradeGuider USA's sales, advertising and promotion of the VSA and VRA Marks, and through favorable industry acceptance and recognition, the relevant consuming public and trade have come to recognize and identify TradeGuider USA as the source of goods and services provided under the VSA and VRA Marks.

38.     Accordingly, both Marks are assets of incalculable value as an identifier of TradeGuider USA and its high quality products, services and goodwill.

39.     Krueger, as the Manager and Chief Executive Officer of TradeGuider USA, had personal knowledge of TradeGuider USA's use of the VSA and VRA Marks.

40.     On or about July 2, 2006, while an officer and fiduciary of TradeGuider USA, Krueger secured for his personal benefit the volumerangeanalysis.com domain name.

41.     Further, Krueger maintains a personal blog located at www.supplydemandtradingmentor.blogspot.com where Krueger offers products and services using the VSA Mark and which competes with TradeGuider USA's products and services. Krueger has used the VSA Mark in other solicitations to TradeGuider USA customers.  For example, Krueger solicited TradeGuider USA customers at the Australian Technical Analysis Association Conference using the VSA Mark.

### COUNT I – BREACH OF THE EMPLOYMENT AGREEMENT
### (AGAINST KRUEGER)

42.     For its Paragraph 42, TradeGuider USA repeats and realleges Paragraphs 1 through 41 as if set forth herein.

43.     Krueger and TradeGuider USA entered into a valid and binding Employment Agreement.

44.     TradeGuider USA has performed all of its obligations under the Employment Agreement.

45.     The Employment Agreement entered into by and between Krueger and TradeGuider USA in or about December 2003, provides that Krueger shall serve as Chief Executive Officer of TradeGuider USA for a period of not less than the (10) years commencing on January 1, 2004.

46.     By resigning as Chief Executive Officer of TradeGuider USA on September 11, 2007, Krueger breached his Employment Agreement.  Krueger's September 11, 2007 resignation is a refusal by Krueger to faithfully abide by the terms of his Employment Agreement and a failure to substantially perform his duties on behalf of TradeGuider USA.

47.     The Employment Agreement contained non-competition, non-solicitation and confidentiality provisions.

48.     Krueger breached the non-competition, non-solicitation and confidentiality provisions of the Employment Agreement by, among other things:

(a)     soliciting TradeGuider USA's customers, including but not limited to solicitations concerning the "Foundations" course that Krueger developed for TradeGuider USA while an employee of TradeGuider USA;

(b)    soliciting TradeGuider USA's customers and competing with TradeGuider USA, including but not limited to solicitation and competition through Krueger's blog located at www.supplydemandtradingmentor.blogspot.com;

(c)    on information and belief, improperly using the VSA Software to create a competing product; and

(d)    competing against TradeGuider USA and using TradeGuider USA's Confidential Information in a competitive endeavor.

49.    As a result of Krueger's breach of his Employment Agreement, TradeGuider USA has been irreparably damaged, which damage is continuing.

50.    As a result of Krueger's breach of his Employment Agreement, TradeGuider USA has suffered and is continuing to suffer damages in an amount that will be proven at trial.

### COUNT II – BREACH OF FIDUCIARY DUTIES
### (AGAINST KRUEGER)

51.    For its Paragraph 51, TradeGuider USA repeats and realleges Paragraphs 1 through 41 as if set forth herein.

52.    Krueger, as Chief Executive Officer and Manager of TradeGuider USA, is a fiduciary for TradeGuider USA.  Specifically, Krueger owed TradeGuider USA the fiduciary duties of, *inter alia*, good faith, fair dealing, due care, candor and loyalty.

53.    As a fiduciary, Krueger had a duty to safeguard TradeGuider USA's interests.

54.     TradeGuider USA's overriding business objective is to provide excellent decision support software and education to empower traders and investors at every stage of their development.

55.     Krueger willfully and maliciously breached his fiduciary duties to TradeGuider USA by, among other things:

(a)     on information and belief, improperly using the TradeGuider USA VSA Software to create a competing product;

(b)     competing against TradeGuider USA and using TradeGuider USA's Confidential Information in a competitive endeavor;

(c)     soliciting TradeGuider USA's customers for his personal benefit;

(d)     conspiring with Williams to damage TradeGuider USA's business and its relationships with current TradeGuider USA customers;

(e)     issuing checks to himself personally and to creditors who gave TradeGuider USA credit without requiring immediate payment so causing TradeGuider USA's bank account to go overdrawn and a check to be returned.

(f)     intentionally damaging TradeGuider USA's credibility with key suppliers and partners;

(g)     publicly disparaging TradeGuider USA and its remaining members\staff; and

(h)     usurping for his personal benefit opportunities that belonged to TradeGuider USA.

56.     Without any legitimate business justification, Krueger committed these acts with actual malice, intending to harm TradeGuider USA and improve Krueger's own competing venture.

57.     TradeGuider USA has sustained, and/or will sustain, substantial damages as a direct and proximate result of Krueger's misconduct in an amount to be proven at trial, but in any event, not less than an amount equal to the value of TradeGuider USA's lost customers, lost opportunities and profits, and attorneys' fees and costs.

58.     TradeGuider USA has no adequate remedy at law.

**COUNT III – CONVERSION**
**(AGAINST KRUEGER)**

59.     For its Paragraph 59, TradeGuider USA repeats and realleges Paragraphs 1 through 41 as if set forth herein.

60.     TradeGuider USA is the lawful owner and controls all rights to TradeGuider USA's property, including several laptops and printers, software, files, display screens, receipts, bank statements, checks and check stubs, documentation and other property and Confidential Information belonging to TradeGuider USA.

61.     Moreover, through exclusive license, TradeGuider USA is the lawful owner and controls the VSA Software in the United States and Canada.

62.    Since Krueger's September 11, 2007 resignation, Krueger has wrongfully claimed ownership to, and improperly exercised control over, said property, including several laptops and printers, software, files, display screens, receipts, bank statements, checks and check stubs, documentation and other property and Confidential Information belonging to TradeGuider USA.

63.    Since Krueger's September 11, 2007 resignation, Krueger has wrongfully claimed ownership to, and improperly exercised control over, the VSA Software and other intellectual property owned by TradeGuider USA, including but not limited to certain CD-ROM products and educational seminars developed by TradeGuider USA and specifically including the "Foundations Course" developed by Krueger while employed by TradeGuider USA.

64.    These wrongful acts by Krueger amount to tortious conversion of said property.

65.    TradeGuider USA has sustained, and/or will sustain, substantial damages, in an amount to be determined at trial, as a direct and proximate result of the above-described tortious conversion by Krueger.

66.    Moreover, these actions by Krueger threaten to irreparably harm TradeGuider USA as the software is unique.

67.    TradeGuider USA has no adequate remedy at law.

### COUNT IV – FEDERAL TRADEMARK INFRINGEMENT
### (AGAINST KRUEGER)

68.    For its Paragraph 68, TradeGuider USA repeats and realleges Paragraphs 1 through 41 as if set forth herein.

69.     Krueger's unauthorized use of the VRA Mark is likely to cause confusion, mistake or deception as to the source, sponsorship or approval of the products and services sold by Krueger.

70.     The relevant consuming public and the trade are likely to believe that Krueger's products and services originate with TradeGuider USA, are licensed, sponsored, approved, produced or developed by TradeGuider USA, or are in some way connected with or relate to TradeGuider USA.

71.     Krueger's unauthorized use of the VRA Mark constitutes intentional and willful infringement of TradeGuider USA's rights.

72.     Krueger's infringing acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to TradeGuider USA, for which TradeGuider USA has no adequate remedy at law.

## COUNT V – FEDERAL UNFAIR COMPETITION
### (AGAINST KRUEGER)

73.     For its Paragraph 73, TradeGuider USA repeats and realleges Paragraphs 1 through 41 as if set forth herein.

74.     Krueger's unauthorized use of the VSA and VRA Marks constitutes use of a false designation of origin and false or misleading representation, which wrongly and falsely designates, describes, and represents the origin of Krueger's products and services as originating from or being connected with TradeGuider USA, and is likely to cause confusion, or to cause mistake, or to deceive as to Krueger's affiliation, connection, or association with TradeGuider

USA, or as to the origin, sponsorship, or association of Krueger's products and services by TradeGuider USA in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

75.     Krueger's acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to TradeGuider USA, for which TradeGuider USA has no adequate remedy at law.

### COUNT VI – CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES (AGAINST KRUEGER)

76.     For its Paragraph 76, TradeGuider USA restates and realleges the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

77.     Krueger's unauthorized use of the VSA and VRA Marks has caused, and is likely to cause in the future, public injury relating to consumers' perceptions of the origin of Krueger's products and services.  Krueger's acts constitute unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.

78.     Krueger's acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to TradeGuider USA, for which TradeGuider USA has no adequate remedy at law.

### COUNT VII – ILLINOIS DECEPTIVE TRADE PRACTICES (AGAINST KRUEGER)

79.     For its Paragraph 79, TradeGuider USA restates and realleges the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

80.    Krueger's unauthorized use of the VSA and VRA Marks has caused, and will continue to cause, a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation, or connection of Krueger's and TradeGuider USA's businesses and products, because it gives rise to the incorrect belief that Krueger's business and products have some connection with TradeGuider USA.

81.    Krueger's acts constitute deceptive trade practices in the course of Krueger's business in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*.

82.    Krueger's acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to TradeGuider USA, for which TradeGuider USA has no adequate remedy at law.

## COUNT VIII – ILLINOIS COMMON LAW UNFAIR COMPETITION
### (AGAINST KRUEGER)

83.    For its Paragraph 83, TradeGuider USA restates and realleges the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

84.    As a result of Krueger's actions, Krueger has misappropriated valuable property rights of TradeGuider USA, has passed off his products as those of TradeGuider USA, is trading on the goodwill symbolized by the VSA and VRA Marks, and is likely to cause confusion, mistake, or to deceive members of the relevant consuming public and the trade.  Krueger's acts constitute unfair competition in violation of the common law of the State of Illinois.

85.    Krueger's acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to TradeGuider USA, for which TradeGuider USA has no adequate remedy at law.

### COUNT IX – DEFAMATION
### (AGAINST KRUEGER)

86.    For its Paragraph 86, TradeGuider USA repeats and realleges Paragraphs 1 through 41 as if set forth herein.

87.    Krueger, on his public blog, has stated several false statements of fact about TradeGuider USA and its members.

88.    In addition, at the Australian Technical Analysis Association Conference, Krueger made several false statements of fact about TradeGuider USA and its members.

89.    Krueger published these false statements of fact about TradeGuider USA to third parties through his blog and other public statements.

90.    As a result of Krueger's defamatory statements, TradeGuider USA has been damaged in an amount to be proven at trial.

### COUNT X – TRADE LIBEL
### (AGAINST KRUEGER)

91.    For its Paragraph 91, TradeGuider USA repeats and realleges Paragraphs 1 through 41 as if set forth herein.

92.    Krueger, on his public blog, has stated several false statements of fact about TradeGuider USA and its members.

93.     In addition, at the Australian Technical Analysis Association Conference, Krueger made several false statements of fact about TradeGuider USA and its members.

94.     Krueger made these statements in bad faith, with knowledge of their falsity or with reckless disregard of their truth.

95.     Krueger published these defamatory statements of fact about TradeGuider USA to third parties through his blog and other public statements.

96.     Krueger's defamatory statements directly defame TradeGuider USA's business methods and operations and were made by Krueger to improperly compete with TradeGuider USA and to take away TradeGuider USA's current and potential customers.

97.     As a result of Krueger's defamatory statements, TradeGuider USA has been damaged in an amount to be proven at trial.

### COUNT XI – CONSPIRACY
### (AGAINST KRUEGER AND WILLIAMS)

98.     For its Paragraph 98, TradeGuider USA repeats and realleges Paragraphs 1 through 41 as if set forth herein.

99.     Krueger worked with Williams to commit wrongful acts, including interfering with TradeGuider USA's existing business relations and infringing on TradeGuider USA's intellectual property rights.

100.     During the conspiracy, Krueger and Williams planned to form a company of their own which would license the VSA Software in violation of TradeGuider USA's exclusive

license in the VSA Software and TradeGuider USA's exclusive rights in the federally registered VRA Mark.

101.    As part of the conspiracy, Krueger and Williams specifically intended and acted to deny TradeGuider USA access to the VSA Software and certain intellectual property developed by Krueger while Krueger was employed with TradeGuider USA.

102.    In furtherance of the conspiracy, Williams issued a letter to TradeGuider UK improperly denying TradeGuider UK's and TradeGuider USA's rights to the VSA Software and demanding that TradeGuider cease and desist from using the VSA Software and to accept Williams and Krueger's claim for future damages.

103.    These acts are in furtherance of the conspiracy to interfere with TradeGuider USA's business relationships and seeks to ensure the future success of Krueger and Williams' competing venture, which was ultimately formed to exploit Volume Spread Analysis and/or Volume Range Analysis, the VSA and VRA Marks, and the same VSA Software covered by TradeGuider USA's purchase and interim license agreement.

104.    TradeGuider USA suffered, and continues to suffer, damages to its business and business opportunities as a direct and proximate result of Krueger and Williams' wrongful conduct.

105.    As a result of their conspiracy Williams and Krueger are jointly and severally liable for the acts discussed in Counts I through X hereof, which ere in furtherance of the conspiracy.

**JURY DEMAND**

106.    TradeGuider USA hereby demands a trial by jury as to all appropriate claims set forth herein pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure.

WHEREFORE TradeGuider USA respectfully requests that this Court (1) enter judgment in favor of it and against Krueger and Williams on all counts; (2) award TradeGuider USA damages in an amount to be proved at trial; (3) enter an injunction (i) prohibiting Krueger and Williams from soliciting TradeGuider USA customers, (ii) prohibiting Krueger and Williams from competing with TradeGuider USA, (iii) prohibiting Krueger and Williams from using the VSA Software, (iv) prohibiting Krueger and Williams from using TradeGuider USA Confidential Information, (v) ordering Krueger to return TradeGuider USA's property to it, (vi) prohibiting Krueger and Williams from using the VSA and VRA Marks, (vii) ordering the transfer of the www.volumerangeanalysis.com domain name to TradeGuider USA, and (iv) prohibiting Krueger and Williams from disparaging TradeGuider USA; (4) award TradeGuider USA its costs and attorneys' fees; (5) award punitive damages; and (6) grant any such additional and further relief the Court deems equitable and just.

Dated: November 13, 2007                          Respectfully submitted,
                                                  TRADEGUIDER SYSTEMS, LLC.


                                                  __/s/ George R. Spatz_____ __
                                                  By one of Its attorneys

Stuart Smith (Atty. No. 2655098)
George R. Spatz (Atty. No. 6278494)
Jeremiah J. Posedel (Atty. No. 6291892)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Tel.     312.849.8100
Fax      312.849.3690

\4859212.1